# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LAURA L. PATTERSON, | ) | Case No. 1:20-cv-566 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| SWAGELOK COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ERIC L. PATTERSON, | ) | Case No. 1:21-cv-470 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| UNITEDHEALTH GROUP, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Eric and Laura Patterson, a married couple, have health insurance through Mr. Patterson's employer, Swagelok Company.  United Healthcare, an umbrella term for a group of affiliated companies, administers the Plan.  Only months apart, Mr. and Mrs. Patterson were involved in separate motor vehicle accidents. Following each accident, United Healthcare paid for the Pattersons' medical treatment.  The Pattersons sought compensation from the insurers of the drivers of the other vehicles from their accidents.  Both obtained a settlement.  Then, United Healthcare pursued reimbursement of the medical costs it paid because of the

accidents.  It did so pursuant to a subrogation and reimbursement provision in a summary plan description of the healthcare policy.  The Pattersons challenged whether the Plan contained such rights.  Disputes over the Plan's subrogation and reimbursement rights have resulted in a decade-long multiplication of litigation by the parties in both State and federal court.

Two of those cases are before the Court—one filed in 2020 by Laura Patterson and the other in 2021 by Eric Patterson.  The Pattersons have consolidated their allegations from the two cases into a single complaint.  (*Laura Patterson* ECF No. 58; *Eric Patterson* ECF No. 77.)  Defendants jointly move to dismiss the combined complaint.  (*Laura Patterson* ECF No. 61; *Eric Patterson* ECF No. 80.)  For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

On Defendants' motion to dismiss, the Court takes the facts alleged in the complaint as true and takes judicial notice of the State-court opinions and proceedings referenced in the complaint, without converting this motion into one for summary judgment.  *See Wyser-Pratt Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).  To simplify, the record shows the following facts.

In November 2014, Eric Patterson suffered injuries in a motor vehicle accident. He sued the other driver and his insurer in the Summit County, Ohio Court of Common Pleas.  There, he joined a claim against the Swagelok Plan and United Healthcare, disputing the subrogation and reimbursement interest they asserted.  In

2

June 2017, the Pattersons settled the case and agreed to pay $25,000 in satisfaction of the Swagelok Plan's subrogation and reimbursement rights.

In July 2015, Laura Patterson was also in a motor vehicle accident and suffered injuries.  She sued the other driver and her insurer, this time in the Medina County, Ohio Court of Common Pleas.  Again, she joined a claim against the Swagelok Plan and United Healthcare, challenging their assertion of subrogation and reimbursement rights.  In February 2018, the Plan—for the first time—produced an ERISA plan document.  Previously, the Pattersons only received summary plan descriptions.  Unlike the summary plan descriptions, the Plan itself did *not* contain a subrogation or reimbursement provision.  Following production of the plan document, in September 2018, the Medina County Court of Common Pleas denied the Plan's motion for summary judgment and granted summary judgment for the Pattersons.  The Plan appealed.

In December 2018, while that appeal was pending, Swagelok (acting as fiduciary of the plan) sued Laura Patterson and her attorneys in the United States District Court for the Northern District of Ohio.  *Swagelok Co. v. Laura Patterson*, No. 5:18-cv-2822.  Swagelok sought a preliminary injunction preventing Laura Patterson and her attorneys from disbursing the settlement funds from the Medina County case.  In April 2019, the Court ordered that case be perpetually stayed and administratively closed subject to re-opening at the conclusion of the State proceedings—specifically, the appeal of the Medina County Case.  That case remains closed.

3

Meanwhile, in March 2019, the Pattersons moved for sanctions in the Summit County case for concealment of relevant evidence—the plan document produced in the Medina County case. In June 2019, the Summit County Court of Common Pleas determined that it had no jurisdiction to adjudicate the sanctions application. The Pattersons appealed.

In March 2020, Laura Patterson filed the first of the captioned cases, *Laura L. Patterson v. Swagelok Co.*, No. 1:20-cv-566. This case was assigned to the same judge presiding over her first federal lawsuit, *Swagelok Co. v. Laura Patterson*, No. 5:18-cv-2822, which was stayed pending completion of the appeal in the Medina County case.

In October 2020, the Ohio Court of Appeals reversed and remanded the ruling of the Summit County Court of Common Pleas regarding jurisdiction over the Patterson's post-settlement motion for sanctions. Accordingly, the Summit County court re-instated that case to its active docket. But the court subsequently transferred the case back to its inactive docket when the Plan sought discretionary review at the Ohio Supreme Court. In January 2021, the Ohio Supreme Court declined jurisdiction. The final entry on the docket of the case in the Summit County Court of Common Pleas shows a status conference scheduled for June 16, 2022, but the docket does not indicate whether that conference occurred, what was discussed, or what resulted.

In March 2021, Eric Patterson filed the second captioned case, *Eric L. Patterson v. UnitedHealthcare Insurance Co.*, No. 1:21-cv-470. This case was

4

originally assigned to the undersigned, who did not preside over the two other related federal cases.  No party alerted the Court to the existence of the earlier-filed federal cases, notwithstanding the Court's Local Rules requiring such a disclosure. Defendants moved to dismiss, and Plaintiff moved for leave to amend.  In January 2022, the Court granted Defendants' motion to dismiss the federal claims, declined to exercise supplemental jurisdiction over the State-law claims, and denied as futile the motion for leave to amend.  Eric Patterson appealed.

Meanwhile, in September 2021, the Ohio Court of Appeals affirmed the judgment in favor of the Pattersons in the Medina County Case.  The Plan sought discretionary review at the Ohio Supreme Court, which in February 2022 declined to hear the case.  Then, the Plan petitioned for a writ of certiorari from the United States Supreme Court, which in October 2022 also declined to review the case.

In January 2023, Eric Patterson re-filed in State court his State-law claims that the Court dismissed in the federal lawsuit when it declined supplemental jurisdiction.  In February 2023, Defendants removed that case to federal court on the basis of complete ERISA preemption—creating a fourth federal action.  *Eric L. Patterson v. UnitedHealthcare Group, Inc.*, No. 1:23-cv-378.

In August 2023, the Sixth Circuit affirmed in large part and reversed in part the Court's dismissal of Eric Patterson's 2021 federal case, leaving several issues for the Court to decide in the first instance on remand.  *Patterson v. United States Healthcare Ins. Co. (Patterson I)*, 76 F.4th 487, 494 (6th Cir. 2023).  Following the Sixth Circuit's decision, the parties engaged in a private mediation, but were unable

5

to resolve their dispute.  Then, in September 2024, the Court reassigned Laura Patterson's 2020 federal case to the undersigned because of the similarity of issues with the other two Patterson cases.  As a result, the active federal cases are now pending before one judge.

On January 9, 2025, the Court issued an order granting in part and denying in part the motion to dismiss Eric Patterson's 2021 case on remand from the Sixth Circuit.  The Court allowed Eric Patterson to proceed with certain claims under the Employee Retirement Income Security Act of 1974.  In that same order, the Court denied Eric Patterson's motion to remand the 2023 case and granted the motion to dismiss it, determining that ERISA completely preempted his State-law claims and that the result of recasting them as ERISA claims would duplicate the already pending 2021 case.

In February 2025, Eric Patterson moved for reconsideration in both of his federal cases (the 2021 case and the 2023 case).  The Court denied those motions, and Eric Patterson appealed in the 2023 case, challenging the dismissal of his State-law claims based on complete ERISA preemption.  In his view, the State-law claims were wholly independent causes of actions that could proceed in parallel with the ERISA claims.  On December 2, 2025, the Sixth Circuit affirmed dismissal of Eric Patterson's State-law claims, determining that they were completely preempted by ERISA.  *See Patterson v. UnitedHealth Group, Inc. (Patterson II)*, 161 F.4th 415 (6th Cir. 2025).

The Sixth Circuit's ruling affirming dismissal of Eric Patterson's State-law claims leaves two active federal cases pending before the Court—the 2020 case filed

6

by Laura Patterson and the 2021 case filed by Eric Patterson.  Also, in the State courts, there is an action pending in the Summit County Court of Common Pleas, but it appears to be inactive.

Following the Court's denial of Eric Patterson's motions for reconsideration, the Court discussed with counsel how best to proceed with the two captioned cases. Given the similarity between the two cases, which involve the same claims and issues and the same counsel, the Court determined that the allegations in each case should be consolidated into a single, combined complaint.

Accordingly, the Pattersons combined their allegations into one amended complaint asserting ten claims, jointly and separately, under the Employee Retirement Income Security Act of 1974, the Fair Debt Collection Practices Act, and State law.  In this ruling, the Court addresses Defendants' motion to dismiss the amended complaint.

## JURISDICTION

At the outset, the Court begins with the jurisdictional question of whether the Pattersons have standing to pursue their claims.  Defendants do not challenge Mr. Patterson's standing to bring ERISA claims seeking individual equitable relief under Section 1132(a)(3) but challenge standing for all other claims.  (*Laura Patterson* ECF No. 61-1, PageID #11–15; *Eric Patterson* ECF No. 80-1, PageID #11–15.)  Therefore, the Court examines Mr. and Mrs. Patterson's standing to maintain each asserted claim.

7

Although plaintiffs might have statutory standing under ERISA, they must also have Article III standing. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 541–42 (2020). "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up). Plaintiffs must also "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

### A.  Laura Patterson's Standing

Defendants begin by challenging Mrs. Patterson's standing. (*Laura Patterson* ECF No. 61-1, PageID #1345–49; *Eric Patterson* ECF No. 80-1, PageID #1953–57.) Plaintiffs counter that the law-of-the-case doctrine should apply to Mrs. Patterson's standing because the Court previously determined that it was satisfied with her standing. (*Laura Patterson* ECF No. 65, PageID #1652–53 (citing *Laura Patterson*, ECF No. 40, PageID #927); *Eric Patterson* ECF No. 84, PageID #2260–61 (citing *Laura Patterson*, ECF No. 40, PageID #927).)

"Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). But "the law-of-the-case doctrine 'merely expresses the practice of courts to generally refuse to reopen what has been decided, not a limit to their power.'" *Christianson v. Colt Indus.*

8

*Operating Corp.*, 486 U.S. 800, 817 (quoting *Messinger v. Anderson*, 225 U.S. 436, 444). Therefore, the doctrine "does not foreclose a court from reconsidering issues in a case previously decided by the same court." *Todd*, 920 F.2d at 430.

Application of law-of-the-case doctrine is particularly unsuited to determination of a party's standing. *See, e.g.*, *National Air Traffic Controllers Ass'n v. Secretary of Dep't of Transp.*, 654 F.3d 654, 660 (6th Cir. 2011). This is because standing must exist at every stage of a case. *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). And whenever the issue of standing is in doubt, the Court has an independent obligation to reexamine the issue. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Consequently, the Court must examine its own jurisdiction and ensure that it has the authority to proceed with Mrs. Patterson's claims. *See, e.g., Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations omitted).

Following supplemental briefing and a review of the record, the Court previously determined that it was satisfied with Mrs. Patterson's standing. (*Laura Patterson* ECF No. 40; *Eric Patterson*, ECF No. 61.) However, this determination was made before the filing of the amended complaint and Defendants' motion to dismiss. Nor was it a final decision on the merits. Therefore, the determination is not final and subject to revision at any time the issue of standing is in doubt. Fed. R. Civ. P. 54(b); *FW/PBS*, 493 U.S. at 231.

### A.1.  Laura Patterson's ERISA Claims (Counts II & III)

Defendants argue that, because Mrs. Patterson has not alleged "any specifically identifiable injury for herself," she does not establish an injury in fact to support her standing to pursue her ERISA claims. (*Laura Patterson* ECF No. 61-1,

PageID #1348–49; *Eric Patterson* ECF No. 80-1, PageID #1956–57.)  Mrs. Patterson claims Article III standing because Defendants "subject[ed] her to years of collection efforts . . . which are still ongoing, including the filing of a duplicative lawsuit against her that was directly contrary to a previous court's order."  (*Laura Patterson* ECF No. 65, PageID #1652–53; *Eric Patterson* ECF No. 84, PageID #2260–61.)

To establish injury in fact, a plaintiff must show that the allegedly injured party suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  A particularized interest is a necessary, but not a sufficient requirement for standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 349 (2016) (Thomas, J., concurring).  A concrete injury is one that is real and not abstract, but not necessarily tangible.  *Id.* (citations omitted).  In the context of prospective relief, past harmful conduct does not itself create a case or controversy absent "any continuing, present adverse effects." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

It is undisputed that Mrs. Patterson has not paid any money to Defendants. But Mrs. Patterson argues that, because there is another federal action pending against her in which Defendants seek reimbursement of her settlement funds, she has experienced actual, ongoing harm and not just a risk of real harm. (*Laura Patterson* ECF No. 65, PageID #1655; *Eric Patterson* ECF No. 84, PageID #2263.) However, that reimbursement action is not ongoing. As Mrs. Patterson concedes, the other federal case is "perpetually stayed" and is expected to be voluntarily dismissed.

10

(*Laura Patterson* ECF No. 65, PageID #1652; *Eric Patterson* ECF No. 84, PageID #2260.) Also, the Court previously enjoined the parties from filing any new lawsuit against any other party or from seeking sanctions or fees in either of the pending federal actions without first obtaining leave from the Court to do so. (*Eric Patterson* ECF No. 74, PageID #1655.) In other words, Defendants have no opportunity to pursue reimbursement from Mrs. Patterson—at least not without seeking leave from the Court before doing so. Therefore, Mrs. Patterson is not suffering a past, present, or future harm—let alone an impending one. Without some form of harm, Mrs. Patterson's ERISA claims are not actionable.

### A.2.  Laura Patterson's FDCPA Claim (Count IV)

Defendants also argue that Mrs. Patterson's allegations in the amended complaint fail to plead an injury in fact necessary to support her standing to pursue a claim under the Fair Debt Collection Practices Act—in particular because she has not paid anything to Defendants. (*Laura Patterson* ECF No. 61-1, PageID #1348–49; *Eric Patterson* ECF No. 80-1, PageID #1956–57.) Mrs. Patterson claims that she incurred attorneys' fees, costs, expenses, mental anguish, emotional distress, and frustration because of Defendants' alleged violations of the Act. (*Laura Patterson* ECF No. 58, ¶ 109, PageID #1116; *Eric Patterson* ECF No. 77, ¶ 109, PageID #1724.)

Although Congress authorizes a plaintiff to sue under the FDCPA, a plaintiff does not automatically have standing. *Ward v. NPAS, Inc. (Ward 2)*, 63 F.4th 576, 580 (6th Cir. 2023) (citing *Ward v. NPAS, Inc. (Ward I)*, 9 F.4th 357, 361 (6th Cir. 2021)). Article III still requires that a concrete injury. *Spokeo*, 578 U.S. at 341. Therefore, a plaintiff cannot "allege a bare procedural violation" of the FDCPA

"divorced from any concrete harm." *Id.* In other words, a plaintiff must show that (1) "'the procedural harm itself is a concrete injury of the sort traditionally recognized'" or (2) "'the procedural violations caused an independent concrete injury.'" *Ward 2*, 63 F.4th at 580 (citing *Ward 1*, 9 F.4th at 361). The "most obvious" kind of concrete harms are "traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). If a defendant has allegedly caused either to a plaintiff, then the plaintiff pleads a concrete injury in fact under Article III. *Id.*

At first blush, it might appear that Mrs. Patterson does not have standing to pursue her FDCPA claim because she did not pay any money to Defendants, but the allegations of the amended complaint plead a concrete injury. Specifically, Mrs. Patterson alleges that she has been subjected to multiple, and even duplicative, lawsuits over the settlement funds she received in the lawsuit arising from her motor vehicle accident—even after a State court determined that Defendants were not entitled to reimbursement. As a result, she claims, among other things, that she incurred attorneys' fees and costs, court costs and expenses, and a loss of use of the settlement funds. (*Laura Patterson* ECF No. 58, ¶¶ 61–63, 81 & 120–40, PageID #1096, #1100–09 & #1119–23; *Eric Patterson* ECF No. 77, ¶¶ 61–63, 81 & 120–40, PageID #1704, #1708–17 & #1727–31.) The monetary harm that Mrs. Patterson allegedly suffered is one of the "most obvious" types of concrete harms that a plaintiff can suffer. *TransUnion*, 594 U.S. at 425. Therefore, although she did not

12

reimburse Defendants, Mrs. Patterson alleges a concrete harm that gives her standing to state a claim under the FDCPA.

### A.3.   Laura Patterson's State-Law Claims (Counts VII–X)

As with her FDCPA claim, Mrs. Patterson has standing to pursue her State-law claims.  On the facts alleged, Mrs. Patterson alleges that she suffered a concrete injury in the form of monetary harm—attorneys' fees and costs, court fees and costs, and loss of use of settlement funds—which establishes standing.  *TransUnion*, 594 U.S. at 425.

The Court has jurisdiction over these State-law claims pursuant to 28 U.S.C. § 1367.  Under federal law, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).  This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court.  *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

The Court may, in its discretion, either retain jurisdiction over the State-law claims and proceed on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Mrs. Patterson's right to pursue the remaining claims in State court, *see* 28 U.S.C. § 1367(c)(3).  To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x

13

449, 462–63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)).

Given the lengthy history of this case, including the pattern of multiplying litigation by the parties in both State and federal court, the Court finds that the interests of judicial economy—namely finally resolving all claims between the parties in a single forum—predominate. Therefore, the Court exercises its discretion to retain jurisdiction over Mrs. Patterson's State-law claims.

### B.   Eric Patterson's Standing

The parties do not dispute that Mr. Patterson has standing to pursue individual relief for the $25,000 he paid to Defendants under Section 1132(a)(3). (*Laura Patterson* ECF No. 61-1, PageID #1349; *Laura Patterson* ECF No. 65, PageID #1653, *Eric Patterson* ECF No. 80-1, PageID #1957; *Eric Patterson* ECF No. 84, PageID #2261.)   However, Defendants challenge Mr. Patterson's standing to pursue any other individual relief or relief on behalf of the Plan. (*Laura Patterson* ECF No. 61-1, PageID #1345–1349; *Eric Patterson* ECF No. 80-1, PageID #1953–57.) Mr. Patterson argues that the combined complaint eliminates the standing deficiencies that the Sixth Circuit identified in *Patterson I* and that he can now seek past and prospective relief both individually and on behalf of the Plan. (*Laura Patterson* ECF No. 61-1, PageID #1343; *Eric Patterson* ECF No. 84, PageID #2263.)

Although the parties frame their arguments in terms of Mr. Patterson's standing, the Court considers Mr. Patterson's ability to bring the additional claims in the complaint on behalf of himself and the Plan as implicating law-of-the-case doctrine, not standing. That is, in the current procedural posture, the issue is

whether the Sixth Circuit in *Patterson I* foreclosed Mr. Patterson from pursuing relief other than return of his $25,000 settlement payment from United Healthcare and Optum under Section 1132(a)(3).

### B.1.   Law of the Case (Counts II & III)

"[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Decisions made by an appeals court bind the district court on remand.  *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999) (citing *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)).  Under the mandate rule, which complements law-of-the-case doctrine, the scope of a remand from the court of appeals limits the authority of the district court.  *Campbell*, 168 F.3d at 265. The mandate rule instructs that the district court "is without authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand."  *Id.* Put simply, a lower court must "adhere to the commands of a superior court" and may not "reconsider[] an issue expressly or impliedly decided by a superior court." *Moored*, 38 F.3d at 1421 (citation omitted).  In doing so, the district court must "implement both the letter and the spirit of the mandate" and "take into account the appellate court's opinion and the circumstances it embraces."  *Id.* (cleaned up).  Therefore, a district court must examine the entire opinion to determine whether and how the appellate court intended to limit the remand.  *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004) (citing *Campbell*, 168 F.3d at 266–68).

A remand from an appellate court can either be general or limited in scope, and that distinction governs the district court's authority on remand.  *Monroe v. FTS*

*USA, LLC*, 17 F.4th 664, 669 (6th Cir. 2021) (citing *Campbell*, 168 F.3d at 265).
General remands direct the district court to "address all the matters remaining in the
case, in a way that is consistent with the appellate court's ruling." *Continental Cas.
Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 834 (6th Cir. 2019) (citing *Campbell*,
168 F.3d at 265).  In contrast, limited remands direct the district court to "address
specific issues" and create a "narrow framework" in which the district court may
operate. *Id.* (citations omitted).

In *Patterson I*, the Sixth Circuit determined that Mr. Patterson only had
standing to seek recovery for the $25,000 he lost when he made the settlement
payment. 76 F.4th at 494.  Because he only had standing to seek recovery of that
amount, the court concluded that, "[a]t day's end, Patterson is left with cognizable
claims for breach of fiduciary duty and engagement in prohibited transactions against
United and Optum" and that Section 1132(a)(3) offered "the only viable route for
recovery." *Id.* at 500.  "Consistent with these conclusions," the court reversed
dismissal of Mr. Patterson's breach of fiduciary duty and prohibited transactions
claims and remanded the case. *Id.* In doing so, the Sixth Circuit instructed the Court
to decide whether the complaint's allegations stated a claim for breach of fiduciary
duty or prohibited transactions and if the claims were subject to Rule 9(b)'s
heightened pleading standard. *Id.* at 499.  The Court did so in a ruling dated January
9, 2025. *See Patterson v. UnitedHealthcare Ins. Co.*, 762 F. Supp. 3d 643 (N.D. Ohio
2025).

16

Taking the Sixth Circuit's opinion as a whole, the Court reads the remand as largely a general one—to address all matters remaining in the case consistent with the appellate ruling.  The core difficulty is whether the Sixth Circuit limited its analysis in *Patterson I* to the record before it, such that different allegations in an amended complaint would broaden the claims and remedies available to Mr. Patterson, or whether it concluded as a matter of law that *no* allegation would entitle him to broader relief or to maintain claims on behalf of the Plan, such that the mandate, though general, limits the proceedings in this respect.

Based on the Court's repeated study of *Patterson I*, the latter view best accounts for the Sixth Circuit's opinion and the circumstances it embraces. *Patterson I* determined that Mr. Patterson had standing to pursue only his claim against United Healthcare and Optum for return of the money he paid to Defendants and that Mr. Patterson did not have standing to pursue any other claims.  The Sixth Circuit's analysis at the Rule 12(b)(6) stage relied on the *Twombly* and *Iqbal* standard and rested on the plausible allegations that Mr. Patterson made, including the reasonable and plausible inferences supporting a claim of injury to the Plan.  *See, e.g.*, 76 F.4th at 494.  This analysis extends beyond the specific allegations in the complaint and on a motion to dismiss presents a question of law constituting the law of the case.  Then, the Sixth Circuit directed the Court to proceed on remand "[c]onsistent with these conclusions."  *Id.* at 500.  The Court reads this direction as limiting in nature, specifically narrowing the options and proceedings on remand.

17

Additionally, the Sixth Circuit's recent decision in *Patterson II* affirming the dismissal of Mr. Patterson's State-law claims (recharacterized as ERISA claims, making them duplicative of the theories available to him under Section 1132(a)(3)) supports this approach. In *Patterson II*, the Sixth Circuit reiterated that in *Patterson I* it "mostly affirmed the dismissal of his claims, allowing only *his* ERISA claim under § 1132(a)(3)." 161 F.4th at 420 (emphasis added). Again, the Court reads the Sixth Circuit as having determined Mr. Patterson's standing to pursue a claim on behalf of the Plan as a matter of law, a conclusion which binds the Court and limits its authority to act on remand. Therefore, the Court will not reconsider Mr. Patterson's standing to maintain a claim on behalf of the Plan or to any other claim.

### B.1.a. Exception to Law of the Case

Mr. Patterson argues that, in *Tiara Yachts, Inc. v. Blue Cross Blue Shield of Michigan*, 138 F.4th 457 (6th Cir. 2025), the Sixth Circuit repudiated the view that his pursuit of the $25,000 settlement payment does not give him standing to pursue relief on behalf of the Plan. (*Laura Patterson* ECF No.65, PageID #1343–45 (citing *Tiara Yachts*, 138 F.4th at 471–72); *Eric Patterson* ECF No. 84, PageID #2263–65 (citing *Tiara Yachts*, 138 F.4th at 471–72).) Specifically, Mr. Patterson argues that *Tiara Yachts* stands for the proposition that a plaintiff can seek relief on behalf of a plan under Section 1132(a)(2), even where only seeking individual recovery for losses to the plan account caused by fiduciary breaches. (*Id.*)

The law-of-the-case doctrine allows reconsideration of a previously decided issue if one of three exceptional circumstances exists, including where the controlling authority takes a "subsequent contrary view of the law." *Westside Mothers v.*

18

*Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006).  In language perhaps somewhat easier to understand, an intervening change in the law by the appellate court may allow reconsideration of an issue previously decided.  In *Tiara Yachts*, however, the Sixth Circuit did not change its view on standing for asserting an ERISA claim on behalf of a plan.  There, the Sixth Circuit determined that, even though the complaint did not specify that the plaintiff sought recovery for the plan, the allegations put the defendant on notice that the plaintiff sought recovery on behalf of the plan.  *Tiara Yachts*, 138 F.4th at 471.  In reaching this conclusion, the court found that the "crux of the complaint" was that the defendant "breached its fiduciary duties to the Plan by squandering assets, then wrongfully ke[eping] a portion of overpaid Plan assets as administrative fees."  *Id.*  The court observed that the complaint plausibly alleged harm both to the plaintiff and the plan.

In contrast, the issue in *Patterson I* did not involve notice through the allegations of the complaint.  Instead, the Sixth Circuit analyzed whether Mr. Patterson could maintain an action on behalf of the Plan based on the facts and circumstances of this litigation.  As the Sixth Circuit determined, Mr. Patterson makes no allegation of a loss to the Plan.  Instead, his complaint involves his personal loss of $25,000, which is "an injury entirely divorced from the plan."  *Patterson I*, 76 F.4th at 499.  Because *Tiara Yachts* does not represent a subsequent contrary view of the law, this narrow exception to the law-of-the-case doctrine does not apply here.

### B.1.b. Class Certification

Although the law of the case and the mandate rule foreclose Mr. Patterson from establishing standing to maintain other claims, the Court reads *Patterson I* as

not speaking to whether he may proceed on behalf of a class. Such issues were not directly before the Sixth Circuit in *Patterson I*. At that time, the record contained only a proposed amended complaint that included class allegations. But the class allegations were not the subject of a motion to strike or otherwise implicated in the Court's ruling. Nor did the Sixth Circuit's analysis extend beyond the Rule 12(b)(6) posture to limit Plaintiffs' ability to maintain a class action: "[T]he flaw at the heart of [Mr.] Patterson's theory that other insured were injured was the absence of facts to suggest those injuries actually occurred. Without those facts, the new class action complaint on behalf of a putative class would not survive a motion to dismiss." *Patterson I*, 76 F.4th at 500. Therefore, different factual allegations might permit class allegations, subject to all the requirements of Rule 23. In short, practice under Rule 23 falls within the more general portion of the Sixth Circuit's mandate on remand.

### B.2. Eric Patterson's State-Law Claims (Counts V, VI, & X)

Mr. Patterson concedes that he pled his State-law claims in the amended complaint "to preserve those claims while on appeal in the event their dismissal is reversed and remanded, and with the understanding that should that dismissal be affirmed, then these claims . . . will again be dismissed." (*Laura Patterson* ECF No. 65, PageID #1677; *Eric Patterson* ECF No. 84, PageID #2285.) Because the Sixth Circuit affirmed the Court's dismissal of Mr. Patterson's State-law claims, *see Patterson II*, 161 F.4th at 426, Mr. Patterson's State-law claims are completely preempted and dismissed.

20

\*    \*    \*

For these reasons, Mrs. Patterson has standing to pursue her State-law claims, over which the Court retains supplemental jurisdiction.  Mr. Patterson has standing to pursue his individual claims under Section 1132(a)(3) against United Healthcare and Optum for breach of fiduciary duty and prohibited transactions, with relief limited to the return of his $25,000.

## ANALYSIS

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must "state[] a claim for relief that is plausible, when measured against the elements" of the cause of action asserted.  *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)).  To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes the complaint in the light most favorable to the plaintiff, accepts the well-pled factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor.  *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 760 (6th Cir. 2024) (citing *Courtright v. City of Battle Creek*,

839 F.3d 513, 518 (6th Cir. 2016)).  The Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not.  *Iqbal*, 556 U.S. at 628.  The Court also will not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations."  *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Against the backdrop of this familiar standard, the Court turns to the remaining claims that the Pattersons have standing to pursue.

## I.  Collateral Estoppel (Count I)

First, the Court addresses the collateral estoppel effect, if any, of Mrs. Patterson's case in the Medina County Court of Common Pleas.  In that case, the State court determined that Defendants had no subrogation or reimbursement rights.  Based on that ruling, Plaintiff argues that collateral estoppel bars relitigation of the issue now.

Collateral estoppel, also known as issue preclusion, "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411 (2020) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  The doctrine "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)).  Collateral estoppel prevents "repetitive litigation of the same issue between the same parties[,]" so that "if two parties actually litigated an issue in a prior case, and a court necessarily decided the issue pursuant to entry of a

22

final judgment, then the losing party cannot relitigate the issue against the winner in a later case." *Amos*, 699 F.3d at 451. "Essentially, parties get one chance to litigate an issue of fact or law." *Pogue v. Principal Life Ins. Co.*, 979 F.3d 534, 536 (6th Cir. 2020).

A district court has "broad discretion to determine" whether to apply collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). "When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgement should be given preclusive effect in a federal action." *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999). Therefore, the Court looks to Ohio law.

Under Ohio law, issue preclusion applies where three requirements are met: "the fact or issue (1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom collateral estoppel is asserted was a party in privity with the party to the prior action." *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of North Am.*, 174 Ohio St. 3d 241, 2023-Ohio-3097, 236 N.E.3d 176, ¶ 16 (2023) (quoting *Thompson v. Wing*, 70 Ohio St. 3d 176, 183, 637 N.E.2d 917 (1994)) (cleaned up).

Defendants challenge the applicability of the first and third requirements. The Court addresses each in turn.

### I.A.    Same Fact or Issue

To satisfy the first requirement of issue preclusion, the fact or issue must have been actually and directly litigated. *AJZ's Hauling*, 2023-Ohio-3097, at ¶ 16. It

23

might be that the facts and issues bearing on the ERISA claims in this case were actually and directly litigated in the case in the Medina County Court of Common Pleas. Or maybe they were not. At the pleading stage the Court cannot make such a determination.

Mr. and Mrs. Patterson's cases are similar, but there are differences, which might matter. Each was involved in a motor vehicle accident requiring medical treatment. Each pursued compensation from the insurers of the other drivers and obtained settlements. Then, Defendants sought reimbursement of the medical expenses paid. But the accidents occurred at different times—Mr. Patterson's accident occurred in 2014, and Mrs. Patterson's in 2015. And at the time of Mr. Patterson's accident, the Plan document used in Mrs. Patterson's case to determine that there were no subrogation or reimbursement rights was not in effect—it did not go into effect until January 1, 2015. (*Laura Patterson* ECF No. 58, PageID #1077–78; *Eric Patterson* ECF No. 77, ¶ 39, PageID # 1685–86.) Although that document played an integral role in Mrs. Patterson's case in the Medina County Court of Common Pleas, the parties agree that at this stage of the proceedings it cannot be determined which Plan documents govern subrogation and reimbursement rights for Mr. Patterson's claim. (*Laura Patterson* ECF No. 65, PageID #1667; *Laura Patterson* ECF No. 67, PageID #1728; *Eric Patterson* ECF No. 8, PageID #2275; *Eric Patterson* ECF No. 86, PageID #2336.) Without knowing which Plan documents apply to Mr. Patterson's case, the Court cannot determine whether the facts and issues are the same as those litigated in the Medina County case. *Lucky Brand*, 140

S. Ct. at 1594.  Accordingly, at this time, Defendants are not precluded from litigating whether they have valid contractual subrogation or reimbursements rights against Mr. Patterson.  However, issue preclusion might yet apply.

### I.B.  Privity

Next, the Court looks at whether Defendants in this case are in privity with the Plan, the only defendant in the case in the Medina County Court of Common Pleas.  Although privity for the purposes of issue preclusion is considered to be "somewhat amorphous," Ohio courts have "applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine." *State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 121 Ohio St. 3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 33 (citations omitted).  Privity can be created where there is a "'mutuality of interest, including an identity of desired result.'" *Kirkhart v. Keiper*, 101 Ohio St. 3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8 (quoting *Brown v. Dayton*, 89 Ohio St. 3d 245, 248, 2000-Ohio-148, 730 N.E.2d 958).  In determining whether there is privity, a court "must look behind the nominal parties to the substance of the cause to determine the real parties in interest." *Fort Fry Teachers Ass'n, OEA/NEA v. State Emp. Rels. Bd.*, 81 Ohio St. 3d 392, 396, 1998-Ohio-435, 692 N.E.2d 140.  In other words, a court must consider the party against whom estoppel is being asserted.  *Id.*

Again, at the pleading stage the Court is unable to determine whether there is privity between Defendants and the Plan.  Throughout the multiple State and federal actions, the parties have contested whether the Plan contains a subrogation or reimbursement provision.  As the parties recognize, however, the issue of privity is

25

fact specific.  (*Laura Patterson* ECF No. 65, PageID #1667; *Laura Patterson* ECF No. 67, PageID #1728; *Eric Patterson* ECF No. 8, PageID #2275; *Eric Patterson* ECF No. 86, PageID #2336.)  Accordingly, determining whether there is or was a mutuality of interest between Defendants and the Plan, and whether there was "an identity of desired result" requires the development of a record.  *Kirkhart*, 2004-Ohio-1496, at ¶ 8 (quoting *Brown*, 89 Ohio St. 3d 245 at 248).

*    *    *

For these reasons, the Court cannot determine at this stage of the proceedings whether issue preclusion applies.

## II. Laura Patterson's FDCPA Claim (Count IV)

To prevail on a claim under the Fair Debt Collection Practices Act, the defendant must be a "debt collector" within the meaning of the statute.  *Mellentine v. Ameriquist Mortg. Co.*, 515 F. App'x 419, 423 (6th Cir. 2013).  The FDCPA defines a "debt collector" as "any person" who:  (1) operates in "any business the principal purpose of which is the collection of debts," or (2) "regularly collects . . . debts owed . . . or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  However, the statute expressly excludes from the term "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained."  *Id.* § 1692a(6)(F)(iii).

The parties agree that whether Optum Healthcare and Kreiner & Peters are debt collectors depends on whether the exception in Section 1692a(6)(F)(iii) applies. (*Laura Patterson* ECF No. 61-1, PageID #1357–60; *Eric Patterson* ECF No. 80-1,

PageID #1965–68.)  Under Sixth Circuit precedent, the definition of a debt collector under Section 1692a(6)(F)(iii) "includes any non-originating debt holder that . . . has treated the debt as if it were in default at the time of the acquisition." *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012).  Therefore, "a debt holder or servicer is not a debt collector when it engages in collection activities on a debt that is not, as it turns out, actually owed." *Id.*

Mrs. Patterson does not dispute that the debt was not in default at the time of Defendants' actions.  (*Laura Patterson* ECF No. 65, PageID #1672–73; *Eric Patterson* ECF No. 84, PageID #2280–81.)  Instead, she argues that Defendants "treated the alleged debt (right of S/R) as in default and owed by Mrs. Patterson at the time Optum and K&P initiated collection attempts on behalf of the Plan," so the Section 1692a(6)(F)(iii) exception does not apply.  (*Id.*)  But the facts as alleged do not support this argument.  According to the amended complaint, Defendants contacted Mrs. Patterson about reimbursement *after* her accident but *before* any recovery stemming from the accident from which the Plan could be reimbursed.  (*Laura Patterson* ECF No. 58, ¶¶ 47 & 50–51, PageID #1080–85; *Eric Patterson* ECF No. 77, ¶¶ 47 & 50–51, PageID #1688–94.)  In other words, Defendants provided notice when they first contacted Mrs. Patterson but did not make an effort to collect a debt at that time.

Additionally, the fact that Defendants defended their reimbursement rights in the State-court action and sought a preliminary injunction in federal court to stop the disbursement of settlement funds to Mrs. Patterson pending determination of

27

Defendant's reimbursement rights, does not support the claim that Defendants treated the alleged debt as being in default. Indeed, Mrs. Patterson does not allege that Defendants ever requested a specific amount or told her what she allegedly owed; rather, Defendants generally maintained that they had subrogation and reimbursement rights. (*Laura Patterson* ECF No. 19-3, PageID #795; *Laura Patterson* ECF No. 58, ¶¶ 50–64, PageID #1092–97; *Eric Patterson* ECF No. 77, ¶¶ 50–64, PageID #1693–705.)

These allegations fail to plead that Defendants treated the subrogation or reimbursement rights they pursued as a debt in default. Therefore, Mrs. Patterson's claim that Defendants violated the FDCPA fails as a matter of law.

## III. Laura Patterson's State-Law Claims (Counts VII–X)

Defendants maintain that ERISA completely preempts Mrs. Patterson's State-law claims, as it does Mr. Patterson's State-law claims. ERISA's preemption clause is "one of the broadest ever enacted by Congress." *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) (citation omitted). ERISA is "unique in its preemptive effect," with a scope "among the broadest, if not the broadest, recognized by the Supreme Court." *Sherfel v. Newson*, 768 F.3d 561, 564 (6th Cir. 2014). "The law has such 'extraordinary pre-emptive power . . . that [it] converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Patterson II*, 161 F.4th at 421 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

In determining whether ERISA completely preempts a State-law claim, the Court follows the Supreme Court's two-pronged test. *Aetna Health Inc. v. Davila*, 542

28

U.S. 200, 210 (2004). ERISA completely preempts a State-law claim if (1) "the plaintiff complains about denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'"; and (2) "the plaintiff does not allege the violation of any 'legal duty . . . independent of ERISA or the plan terms.'" *Gardner v. Heartland Indus. Partners*, *LP*, 715 F.3d 609, 612 (6th Cir. 2013) (quoting *Davila*, 542 U.S. at 210). A duty is independent of ERISA or the plan terms where it is "not derived from, or conditioned upon, the terms of the plan and there is no need to interpret the plan to determine whether that duty exists." *Milby v. MCMC LLC*, 844 F.3d 605, 611 (6th Cir. 2016).

### III.A. Civil Conspiracy (Count X)

Mrs. Patterson explains that her civil conspiracy claim against Defendants for fraud is the same as Mr. Patterson's civil conspiracy claim, which the Court previously determined ERISA completely preempted. (*Laura Patterson* ECF No. 65, PageID #1677; *Eric Patterson* ECF No. 84, PageID #2285.) Previously, the Court explained that Ohio law does not recognize civil conspiracy as an independent cause of action and that there must be an underlying unlawful act. *See Patterson v. UnitedHealthcare Ins. Co.*, 762 F. Supp. 3d 643, 665 (N.D. Ohio 2025) (citations omitted). Then, the Court determined that because "any underlying unlawful act arises in the context of an ERISA fiduciary relationship and is too deeply enmeshed with that relationship to tease out or stand alone," ERISA completely preempts the civil conspiracy to commit fraud. *Id.* The Sixth Circuit affirmed and explained that civil conspiracy "is not a separate tort; instead, it requires an actionable 'underlying tort.'" *Patterson II*, 161 F.4th at 425 (citing *Addison Holdings, LLC v. Fox, Byrd &*

29

*Co.*, 2022-Ohio-4784, 203 N.E. 3d 1259, ¶ 100 (Ohio Ct. App.)).  Because Plaintiffs represent that Mrs. Patterson's civil conspiracy mirrors her husband's, which the Court found and the Sixth Circuit affirmed ERISA completely preempts, ERISA also preempts Mrs. Patterson's claim for civil conspiracy.

### III.B. Remaining State-Law Claims (Counts VII, VIII & IX)

Unlike the civil conspiracy claim, Mrs. Patterson argues that the remaining State-law claims for malicious prosecution (Count VII), abuse of process (Count VIII) and tortious interference (Count IX) are "different" than Mr. Patterson's because they are based on Defendants' non-fiduciary conduct, including "abuse of process for filing a duplicative and contradictory lawsuit to a state court ruling" and "interference with a third-party agreement." (*Laura Patterson* ECF No. 65, PageID #1677 (citing ECF No. 58, ¶¶ 124–46, PageID #1119–25); *Eric Patterson* ECF No. 84, PageID #2285 (citing ECF No. 77, ¶¶ 124–46, PageID #1727–33).)  Defendants disagree.  In their view, the issue has "always squarely been about one thing:  whether it was proper, under the terms of the Medical Program and the Welfare Plan, both indisputably ERISA-governed plans, to ask [Mr. and Mrs. Patterson] to reimburse the Medical Program from third-party accident-related recoveries."  (ECF No. 67, PageID #1741–42; ECF No. 86, PageID #2349–50.)

At the pleading stage, Mrs. Patterson's remaining State-law claims turn not on aspects of the Plan or its application, but on the primary conduct of Defendants in pursuing recovery.  That is, Mrs. Patterson alleges non-fiduciary conduct as the basis of her State-law claims. (*Laura Patterson* ECF No. 58, ¶¶ 124–46, PageID #1119–25; *Eric Patterson* ECF No. 77, ¶¶ 124–46, PageID #1727–33.)  Therefore, at this stage

30

of the proceedings, further factual development is necessary to determine whether any aspect of Defendants' non-fiduciary conduct might support an argument for preemption.  After all, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence, such a claim is for the recovery of an ERISA plan benefit." *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999) (citing *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)).

In her State-law claims, Mrs. Patterson does not seek recovery of a benefit under the Plan.  Instead, she requests relief for Defendants' actions after entry of a valid State court judgment that she did not have to reimburse the Plan for her medical expenses because the Plan did not contain valid subrogation or reimbursement rights. (*Laura Patterson* ECF No. 58, ¶¶ 124–46, PageID #1119–25; *Eric Patterson* ECF No. 77, ¶¶ 124–46, PageID #1727–33.)  In other words, these are not claims about Mrs. Patterson's entitlement to benefits that "originates with the 'terms and conditions'" of the Plan.  *Patterson II*, 161 F.4th at 424.

Additionally, preemption is not required merely because the State-law claims reference the Plan.  *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 702 (6th Cir. 2006).  State-law claims that "only tenuously, remotely, or peripherally relate to an ERISA plan" are not completely preempted.  *Central States, Southeast & Southwest Areas Pension Fund v. Mahoning Nat'l Bank¸* 112 F.3d 252, 256 (6th Cir. 1997).  Accordingly, ERISA does not preempt Mrs. Patterson's State-law claims, which relate to Defendants' conduct.

31

\*     \*     \*

For these reasons, ERISA completely preempts Mrs. Patterson's State-law claim for civil conspiracy but not her claims for malicious prosecution, abuse of process, or tortious interference.

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss the amended complaint (*Laura Patterson* ECF No. 61; *Eric Patterson* ECF No. 80).  Mr. Patterson may proceed against Optum and the United Healthcare Defendants under Section 1132(a)(3) for prohibited transactions and breach of a fiduciary duty on behalf of himself.  Mrs. Patterson may proceed with her State-law claims for malicious prosecution, abuse of process, and tortious interference, but not her claim for civil conspiracy.

Finally, the Court **DENIES** Mr. and Mrs. Patterson's motion for leave to file a partial surreply (*Laura Patterson*, ECF No. 69; *Eric Patterson*, ECF No. 88).  The Court received enough briefing from the parties, who had ample opportunity to develop all arguments they wished without the need for a surreply.

**SO ORDERED.**

Dated:  January 9, 2026

_____
        J. Philip Calabrese
        United States District Judge
        Northern District of Ohio